# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 20-00240-01-CR-W-BP |
| ) | |
| VICTOR STOKES, ) | |
| ) | |
| Defendant. ) | |

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant Victor Stokes has been charged with one count of being a felon in possession of ammunition. He filed a Motion to Suppress, (Doc. 18), arguing that the ammunition and statements he made after he was arrested should be suppressed. The Honorable Lajuana M. Counts, United States Magistrate Judge, held a hearing on April 21, 2021, and subsequently issued a Report and Recommendation ("R&R") recommending that the Motion to Suppress be denied.

The Court has conducted a *de novo* review of the Report and Recommendation as required by 28 U.S.C. § 636(b)(1). In particular, the Court has reviewed the parties' submissions before the hearing, the transcript and exhibits from the hearing, Defendant's objections, and the Government's response to the Report and Recommendation. Having conducted this review, the Court adopts the Report as the Order of the Court and denies the Motion to Suppress; the Court's discussion is intended to augment, not supplant, Judge Counts's recommended findings and conclusions.

## I. BACKGROUND

On August 30, 2020, at 2:49 a.m., Independence Police Officer Ian Storey responded to a call at a salvage lot for vehicles ("the Lot"). The call indicated that a suspicious person had jumped

a guardrail into the Lot, and described the person as a black male wearing a white t-shirt and dark-colored shorts.

At the hearing, Storey testified that there were multiple similar salvage lots within his dispatch area, and that he frequently responded to calls at such lots. Storey further indicated that many of those calls occurred between 1:00 a.m. and 7:00 a.m., and the calls often ended with him arresting an intruder for stealing from vehicles or trespassing.[1]

On the night in question, Storey arrived at the Lot and observed Defendant—who was wearing a white t-shirt and shorts, but is not black—walking around on the Lot. Defendant was on private property, and hence was trespassing, but Storey did not see him commit any other crime. Storey approached Defendant and began speaking to him; Defendant explained that his car had been stolen, and he believed it was on the Lot. Defendant apparently pointed at a vehicle he claimed was his, but Storey did not see any such vehicle. Storey asked Defendant whether he had reported the vehicle stolen, and Defendant indicated that he had not. This made Storey suspicious of Defendant's explanation for being on the Lot.

At this point, Defendant was sitting down on a curb. Storey decided to frisk Defendant for weapons, because he believed Defendant was trespassing and wanted to ensure his own safety while he continued to investigate. Storey also observed that there were "a bunch of things" in Defendant's pockets, which made him suspicious. (Tr. at 9.) Accordingly, Storey asked Defendant to stand up. Defendant refused to do so. Storey repeated the command, and Defendant stood up, but began backing away. Based on his experience as a police officer, Storey believed

---

[1] The R&R describes Storey's testimony as follows: "Officer Storey testified that at that time, he was being called to *these salvage lots* a couple times a week." (Doc. 34, p. 2, ¶ 1 (emphasis added).) The Government filed a response to the R&R to clarify what Storey meant by his testimony, namely that he was often called to salvage lots in his dispatch area—not necessarily the same salvage lot at which he encountered Defendant. (Doc. 36.) The Court does not believe this distinction is especially important in this context; what matters is whether Storey's experience responding to early-morning calls to salvage lots gave him reason to suspect that Defendant was committing a crime, and there is no reason to think that the precise location of the salvage lots bears on that question.

that Defendant was preparing to run, and attempted to grab him. Defendant reached into his waistband, causing Storey to believe that Defendant was reaching for a weapon. Storey drew his gun and Defendant turned and ran away. Storey gave chase, and then drew his Taser and tased Defendant. Defendant fell to the ground, and Storey placed him in handcuffs and told him he was under arrest for interfering with police.

Storey then conducted a search of Defendant's person incident to the arrest. He discovered a sawed-off shotgun tucked into Defendant's pants, as well as several shotgun shells. Storey later discovered that Defendant was a convicted felon. The Court will set out additional facts as needed in the next section.

## II.  DISCUSSION

In the R&R, Judge Counts concluded that until Storey instructed Defendant to stand up, the encounter was consensual, and hence, did not implicate Defendant's Fourth Amendment rights. *See, e.g., United States v. Hernandez*, 854 F.2d 295, 297 (8th Cir. 1988) (when "law enforcement officers merely approach an individual . . . and ask if he is willing to answer some questions," the "encounter . . . is consensual [and] does not constitute a seizure"). When Storey asked Defendant to stand up so that Storey could frisk him, the encounter changed into an "investigative stop" or "*Terry* stop," which requires that the investigating officer have "a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Montgomery*, 828 F.3d 741, 743 (8th Cir. 2016) (cleaned up; citations omitted); *see also Terry v. Ohio,* 392 U.S. 1, 30 (1968). Finally, after Defendant ran, Storey tased and arrested him; such a "full scale arrest [] must be based on probable cause." *Hernandez*, 854 F.2d at 297.

Defendant's objection to the R&R focuses on the second stage of the encounter; he contends that Storey lacked a "reasonable suspicion supported by articulable facts that criminal

3

activity may be afoot." Specifically, Defendant contends that (1) Storey lacked a reasonable suspicion that Defendant was trespassing, because trespassing in Independence, Missouri requires that the owner of the property ask the trespasser to leave, or that the property be fenced in, (Doc. 35, p. 2); and (2) Storey had no reason to suspect Defendant of any other criminal activity. (*Id*. at 3.) Defendant does not contend that his initial conversation with Storey was non-consensual, nor that his ultimate arrest was unsupported by probable cause; however, he argues that because the arrest stemmed from an unconstitutional *Terry* stop, any evidence seized during the arrest is "fruit of a poisonous tree" and hence inadmissible. (*Id*. at p. 4 n.1); *see also Wong Sun v. United States*, 371 U.S. 471 (1963).

The Court agrees with Judge Counts that Storey's initiation of the *Terry* stop was supported by reasonable suspicion. In forming a reasonable suspicion of criminal activity, law enforcement officers may consider the "totality of the circumstances," "draw[ing] on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *United States v. Davison*, 808 F.3d 325, 629 (8th Cir. 2015) (citation omitted). Even "[i]nnocent actions can give rise to reasonable suspicion when considered as part of the totality of the circumstances." *Id*. When conducting an investigative stop, an officer "may perform a pat-down frisk for weapons on a suspect where the officer believes the suspect may pose a safety threat." *United States v. Hurd*, 785 F.3d 311, 315 (8th Cir. 2015). "A protective frisk is constitutionally reasonable when a police officer 'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot . . . .'" *United States v. Cornelius*, 391 F.3d 965, 968 (8th Cir. 2004) (quoting *Terry*, 392 U.S. at 30).

Here, Storey received a call reporting a trespasser on a salvage lot in the early hours of the morning. Based on his experience as a law enforcement officer, he believed that individuals

trespassing on salvage lots at night are often stealing from vehicles.  He found Defendant, whose attire—though not his race—matched the description of the alleged trespasser.  Defendant's pockets appeared to be unusually full, and when Storey asked Defendant what he was doing on the Lot, Defendant's explanation did not make sense—especially given that Defendant was on the Lot at 2:30 a.m., many hours before it would open for business.  Whether or not Defendant was legally "trespassing" on the Lot, given the totality of these facts, the Court finds that Storey had a "reasonable suspicion that criminal activity [was] afoot," and had a sufficient "belie[f] that [Defendant] may pose a safety threat" to support his choice to attempt to frisk Defendant.  Consequently, the attempted frisk did not violate Defendant's Fourth Amendment rights, and so his subsequent arrest and the evidence that resulted are not "fruit of a poisonous tree."

### III.  CONCLUSION

For the foregoing reasons, the Court adopts Judge Counts's R&R, and **DENIES** Defendant's Motion to Suppress.  (Doc. 18.)

**IT IS SO ORDERED.**

DATE: July 13, 2021

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT